UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

STANISLAUS NWACHUKWU,                          CIVIL ACTION
ET AL.

VERSUS                                              NO. 23-1864

U-HAUL CO. OF LOUISIANA                         SECTION "R" (2)

## ORDER AND REASONS

Before the Court is defendant U-Haul Co. of Louisiana's ("UHLA")
motion for summary judgment.[1]  For the following reasons, the Court grants
defendant's motion.

## I.    BACKGROUND

This case arises out of plaintiff Stanislaus Nwachukwu's rental of a U-
Haul truck.[2]  Plaintiffs allege that defendant UHLA filed a false police report,
leading to a wrongful arrest, for Stanislaus's failure to timely return the
rented van.  Plaintiffs filed suit in state court against UHLA on April 28,
2023, asserting claims for defamation, discrimination, negligence, false
imprisonment, negligent infliction of emotional distress, and intentional

---

[1]    R. Doc. 31.
[2]    R. Doc. 1-1.

infliction of emotional distress.[3]  Defendant removed the case to federal court on the grounds of subject matter jurisdiction under 28 U.S.C. § 1331, and supplemental jurisdiction under 28 U.S.C. § 1367.[4]  Defendant now moves for summary judgment on all claims,[5] which plaintiffs oppose.[6]

The Court considers the motion below.

## II.    LEGAL STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam).  "When assessing whether a dispute to any material fact exists, [the Court] consider[s] all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence."  *Delta & Pine Land Co. v. Nationwide Agribusiness Ins.*, 530 F.3d 395, 398-99 (5th Cir. 2008) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); and *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  All reasonable

---

[3]    *Id.*
[4]    R. Doc. 1.
[5]    R. Doc. 31.
[6]    R. Doc. 55.

2

inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment." *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985) (quoting 10A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2738 (2d ed. 1983)); *see also Little*, 37 F.3d at 1075 (noting that the moving party's "burden is not satisfied with 'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence" (citations omitted)). "No genuine dispute of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *EEOC v. Simbaki, Ltd.*, 767 F.3d 475, 481 (5th Cir. 2014).

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings but must identify specific facts that establish a genuine issue for

resolution. *See, e.g.*, *id.*; *Little*, 37 F.3d at 1075 ("Rule 56 'mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" (quoting *Celotex*, 477 U.S. at 322)).

## III.  DISCUSSION

The Court has reviewed the record, and the undisputed facts are as follows.  On December 29, 2022, plaintiff Stanislaus Nwachukwu and UHLA entered into an equipment rental contract, numbered 71524497, for a moving van from UHLA rental center, Acadia Services, LLC ("Acadia").[7] Stanislaus picked the van up from Laplace, Louisiana, and the contract noted that the van was due to be returned on January 1, 2023, in Atlanta, Georgia.[8] The contract listed Stanislaus's contact information, including a phone number.[9]  Acadia gave Stanislaus a copy of the contract when he rented the

---

[7]  R. Doc. 31-4 at 1.

[8]  *Id.*

[9]  *Id.*  The phone number listed on the contract begins in (504), *id.*, but this was a mistake.  Stanislaus's actual area code began with (404). R. Doc. 55-1 at 126.  At the time of contracting, neither he, nor UHLA, recognized that the number listed was incorrect.

4

van.[10]  Stanislaus provided the phone number of an alternative person to contact in Georgia.[11]

Stanislaus did not return the van on January 1, 2023.[12]  He did not contact UHLA or a U-Haul rental center, prompting U-Haul employees to try to reach him.[13]  U-Haul's equipment rental contract notes show that, over a 19-day period, various U-Haul employees attempted to reach Stanislaus by phone, by EAlert, and by demand letter.[14]  U-Haul issued the demand letter by certified mail on January 12, 2023.[15]  On January 19, 2023, Stanislaus received the demand letter.[16]  After sending the demand letter, U-Haul attempted to contact Stanislaus two more times, with no success.[17]

On January 19, 2023, U-Haul indicated on the equipment rental contract notes that the dispatching location will have to report the van stolen.[18] On January 20, 2023, at 11:20 a.m., Stanislaus contacted U-Haul in

---

[10]    R. Doc. 31-5 at 10.

[11]    R. Doc. 51-1 at 107.

[12]    R. Doc. 31-6 at 4–5.

[13]    *Id.*

[14]    *Id.* at 4.  Because the contract listed the incorrect phone number for Stanislaus, *see supra* note 9, Stanislaus asserts that he did not receive the calls.  R. Doc. 55-1 at 124.  The U-Haul call notes indicate that the individual identified as an alternative contact denied knowing Stanislaus.  R. Doc. 31-6 at 4; R. Doc. 51-1 at 107.

[15]    *Id.*

[16]    R. Doc. 55-1 at 115, 118–19; *see also* R. Doc. 31-6 at 4.

[17]    R. Doc. 31-6 at 4.

[18]    *Id.*

Georgia to extend his contract.[19]  He was told to go to a U-Haul location to have the van checked and rented back to him, because the van was about to be marked as stolen.[20]  At 12:27 p.m., a UHLA employee, unaware of any contemporaneous efforts by Stanislaus to return or re-lease the van,[21] filed an incident report with the St. John the Baptist Parish Sheriff's Office for the unauthorized use of a movable under La. Rev. Stat. § 14:68.[22]  The incident report noted that the deputy would apply for a warrant under La. Rev. Stat. § 14:68.

At 2:45 p.m. on January 20, Stanislaus went to the U-Haul location on Northeast Expressway in Chamblee, Georgia to settle with U-Haul and return and re-rent the van.  He paid for the extra days he kept the van and closed his initial rental contract.[23]  Stanislaus then asked to re-rent the same van because it still had his possessions in it.[24]  At 3:50 p.m., the U-Haul rental

---

[19]    *Id.*

[20]    *Id.*

[21]    R. Doc. 69-1 at 2.

[22]    R. Doc. 31-10 at 3.  U-Haul noted in its file that the request to file a stolen report was sent to equipment recovery at 12:06 p.m.  R. Doc. 31-6 at 4.  Plaintiffs state that a UHLA employee submitted the police report at 4:51 p.m.  R. Doc. 55 at 8.  On the police report, 4:51 p.m. is the "disposition" time, at which point a warrant was submitted, and Stanislaus's arrest was pending.  R. Doc. 31-10 at 3.  The police report clearly indicates that the UHLA began submitting the report at 12:27 p.m. and completed submitting the report at 12:52 p.m.  *Id.* at 3–4.

[23]    R. Doc. 31-4 at 2.

[24]    R. Doc. 31-5 at 17.

center in Chamblee, Georgia rented him the same van, due at the same location by February 3, 2023, under contract number 73859115.[25]

On January 29, 2023, an officer with the Chamblee Police Department ran the tags of the parked U-Haul van and discovered that it was associated with an open incident report from St. John the Baptist Parish Sheriff's Office.[26]  There was also an active arrest warrant for Stanislaus.[27]  Ijeoma Nwachulwu told the officer that the issue was resolved with U-Haul and showed the officer the new rental agreement.[28]  Nonetheless, after confirming the warrant, the officer arrested Stanislaus and had the U-Haul impounded.[29]

On Monday, January 31, 2023, Ijeoma informed a U-Haul Co. of Georgia employee that her husband had been jailed at DeKalb County Jail since January 29, 2023.[30]  A U-Haul representative contacted the Chamblee Police Department to determine the steps to obtain his release.[31]  On February 2, the representative contacted the St. John the Baptist Parish

---

[25]    R. Doc. 31-8 at 1.
[26]    R. Doc. 31-9 at 3.
[27]    *Id.*
[28]    *Id.*
[29]    *Id.* at 3–4.
[30]    R. Doc. 31-11 at 1.
[31]    *Id.* at 2.

Sheriff's Office to have the warrant and charges rescinded.[32]  The warrant was recalled on February 2.[33]

The Court considers defendant's motion as to each of plaintiffs' claims below.

## A. Defamation

Plaintiffs asserted a claim for defamation under Louisiana law.[34]  To establish a claim for defamation, a plaintiff must prove the following elements: "(1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault (negligence or greater) on the part of the publisher; and (4) resulting injury."  *Kennedy v. Sheriff of East Baton Rouge*, 935 So.2d 669, 674 (La. 2006).  A plaintiff must allege "with reasonable specificity the defamatory statements allegedly published by defendant."  *Fitzgerald v. Tucker*, 737 So.2d 706, 713 (La. 1999) (quoting *Trentecosta v. Beck*, 703 So.2d 552, 559 (La. 1997)).  And while a plaintiff need not "state verbatim the words on which he bases his cause of action," he "must name the individual offenders and allege separate acts of

---

[32]    *Id.*
[33]    R. Doc. 55-2.
[34]    R. Doc. 1-1 at 3.

defamation as to each, including specific defamatory statements." *Badeaux v. Sw. Computer Bureau, Inc.*, 929 So.2d 1211, 1218 (La. 2006).

UHLA argues it is entitled to a conditional privilege on this claim. Conditional privilege is a defense to defamation in Louisiana. *Holmes v. Lea*, 250 So.3d 1004, 1010 (La. App. 1 Cir. 2018). Louisiana courts have recognized that "the public has an interest in possible criminal activity being brought to the attention of the proper authorities, and have extended a qualified privilege to remarks made in good faith." *Kennedy v. Sheriff of E. Baton Rouge*, 935 So.2d 669, 683 (La. 2006)); *see also id.* ("[V]ital to our system of justice is that there be the ability to communicate to police officers the alleged wrongful acts of others without fear of civil action for honest mistakes."). Statements challenged as defamatory are subject to a conditional privilege when (1) as a matter of law, "the circumstances in which a communication was made satisfy the legal requirements for invoking the conditional privilege," and (2) the privilege was not abused. *Holmes*, 250 So.3d at 1010. The defendant has the burden to prove that the circumstances of the communication entitle it to assert the privilege, the first step of the test. *Kennedy*, 935 So.2d at 687. Then the burden shifts to the plaintiff to establish the second step, abuse of the privilege. *Id.*

The UHLA employee reported Stanislaus's failure to timely return the leased van, in violation of Louisiana law.  Further, he made the complaint to the proper authorities.  Therefore, the Court finds the first step satisfied, because UHLA made the communication in circumstances that satisfy legal requirements for invoking a qualified privilege.  *See id.* (defendant confirmed the existence of the conditional privilege when its employees reported the possible commission of a crime to police); *see also Holmes*, 250 So.3d at 1010 (defendant's communication about the possible commission of a crime to a sheriff's deputy, who was the proper official authorized to protect the public from such an act, satisfied the legal requirement for conditional privilege); *see also Talbert v. Affordable Rent-To-Own of Thibodaux, L.L.C.*, 370 So.3d 1, 13 (La. App. 1 Cir. 2023) (a complaint to a city prosecutor, who was the proper official authorized to protect the public from the alleged crime, established the first step of the conditional privilege analysis).

Plaintiffs now bear the burden to rebut the qualified privilege by establishing that defendant abused the privilege.  *Kennedy* at 689; *see id.* ("Once the privilege was established, it was the plaintiff's burden to demonstrate abuse.").  To do so, plaintiffs must submit evidence that the statements were made knowing they were false or with reckless disregard for whether they were true or false.  *Kennedy*, 935 So.2d at 684.  Mere

negligence as to falsity is not sufficient to prove abuse of the conditional privilege. *Id.* at 684. Only false statements made with a high degree of awareness of their probable falsity meet the reckless disregard standard. *Id.* at 688 (plaintiff must provide "evidence that defendant was highly aware that the statements were probably false"). In other words, plaintiffs must submit "sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication." *Id.* Under this standard, "even proof of gross negligence in the publication of a false statement is insufficient to prove reckless disregard." *Id.*

Plaintiffs fail to come forward with evidence that defendant abused the privilege. Plaintiffs argue that UHLA acted with malice or lack of good faith, and thus fails the second stage of the privilege analysis, because it "push[ed] for the arrest" of Stanislaus, and because UHLA knew or should have known that the van was re-leased to Stanislaus at the time it was reported stolen to police.[35] The evidence does not support these assertions.

No evidence that could be made admissible supports plaintiffs' assertion that a representative of UHLA pushed for Stanislaus to be arrested. Plaintiffs rely on inadmissible hearsay from Stanislaus's deposition in which he testified that he heard the Georgia arresting officer say that he would call

---

[35]    R. Doc. 55 at 6–7.

U-Haul to gather more information before arresting Stanislaus.[36]    This evidence is not only inadmissible hearsay, but it also does not demonstrate that the arresting officer spoke to UHLA.    Additionally, plaintiffs cite to Georgia police's arrest incident report.    The arrest report, even if admissible, indicates only that the arresting officer confirmed through police channels that there was an open warrant, not that he communicated with U-Haul or any representative of UHLA.[37]    In fact, the UHLA employee, who plaintiffs assert spoke with Georgia police, submitted an affidavit stating that he never made any statement to Georgia law enforcement officials indicating that he wanted Stanislaus to be arrested or the van impounded.[38]    Plaintiffs provide no deposition testimony from the arresting officers or from any U-Haul or UHLA employees to rebut this.    Plaintiffs' evidence does not show that the officers communicated with UHLA by any means or that UHLA instructed the officers to arrest Stanislaus.    Nor does it show that UHLA's employees made any statement with knowledge of its falsity or reckless disregard for its truth or falsity.

Plaintiffs also fail to establish that UHLA knew or was highly aware of the probability that Stanislaus renewed the contract in Georgia before UHLA

---

[36]    R. Doc. 55-1 at 155.
[37]    R. Doc. 31-9 at 3–4.
[38]    R. Doc. 39-1 at 3.

filed the police report in Louisiana.  Even if the chronology asserted by plaintiffs were supported by the record,[39] which it is not,[40] pointing to a timeline of events involving actors in two different states, with no evidence that they communicated with each other, is insufficient to show that UHLA made the police report with knowledge of or reckless disregard for of its probable falsity.[41]  Moreover, the UHLA employee who made the police report stated in his affidavit that, at the time he made the report, he did not know about any contemporaneous efforts by Stanislaus to return and release the U-Haul van.[42]

---

[39]  R. Doc. 55 at 8.

[40]  *See infra* notes 43–45 and accompanying text.

[41]  Furthermore, UHLA, the only defendant in this case, is a Louisiana business corporation, and there is no evidence that it had any operations or employees in Georgia.

[42]  R. Doc. 69-1 at 2.  Plaintiffs assert that the UHLA employee who made the police report was the one who charged Stanislaus's card for the van extension, thus he must have known about the extension.  R. Doc. 55 at 7.  There is no evidence in the record to support this.  Plaintiffs cite Stanislaus's deposition for this assertion, but the cited lines demonstrate that Stanislaus had a Visa card that was charged $738.27 on the same day as the initial rental.  R. Doc 55-1 at 65–66 & 72–73.  This was the amount charged under the first contract, numbered 71524497.  R. Doc. 31-4.  This was not the amount charged on January 20 at the Georgia U-Haul rental center for the extra days Stanislaus had the van or to re-lease the van.  On that day, Stanislaus paid $1,167.48 for the 19 extra days, *id.* at 2, and $572.18 to re-lease the van, R. Doc. 31-8 at 1.  Further, the UHLA employee swore that he never made a charge, or contemporaneously knew of any charges, having to do with Stanislaus's extension of his rental of the van in Georgia.  R.

As to the chronology of events, the record reflects that UHLA made the police report by 12:52 p.m. on January 20, 2023.[43]  The U-Haul office in Georgia closed the initial contract at 2:40 p.m. on the same day.[44]  Stanislaus re-rented the same van an hour later at 3:50 p.m.[45]  Even if the Georgia transactions occurred in Eastern Time, and UHLA made the police report in Central Time, the one-hour time difference would not change the above order of events.  At the time UHLA filed the police report with the Sheriff's Office, the van was unaccounted for and 19-days late, and the police report was completed before the van was returned.

Plaintiffs fail to submit evidence that UHLA made the police report with knowledge of its falsity or reckless disregard as to its probable falsity.  They thus fail to demonstrate that defendant abused the privilege.  Therefore, the Court finds that defendant's statements were conditionally privileged and that the privilege was not abused.  The Court grants defendant's motion for summary judgment as to plaintiffs' defamation claim.

---

Doc. 39-1 at 3–4.  Plaintiffs fail to point to any evidence that a UHLA employee was involved in any way with the van's re-leasing.

[43]    R. Doc. 31-10 at 3.

[44]    R. Doc. 31-4 at 2.

[45]    R. Doc. 31-8 at 1.

## B. Discrimination

Defendant also moves for summary judgment on plaintiffs' discrimination claims asserted under Title II of the Civil Rights Act of 1964, 42 U.S.C. § 2000a; La. Rev. Stat. § 51:2247; and Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981.[46]

Under 42 U.S.C. § 2000a, "All persons [are] entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation, . . . without discrimination or segregation on the ground of race, color, religion, or national origin." 42 U.S.C. § 2000a(a). Under La. Rev. Stat § 51:2247, "it is a discriminatory practice for a person to deny an individual the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of a place of public accommodation, resort, or amusement, . . . on the grounds of race." La. Rev. Stat. § 51:2247. A "[d]iscriminatory practice in connection with public accommodations" is "any direct or indirect act or practice of exclusion, distinction, restriction, segregation, limitation, refusal, denial, or any other act or practice of differentiation or preference in the treatment of a person or persons because of race." La. Rev. Stat. § 51:2232(5).

---

[46]     R. Doc. 1-1 at 1−2.

The U.S. Fifth Circuit has held that La. Rev. Stat. § 51:2247 "is substantively similar to Title II of the Civil Rights Act of 1964, 42 U.S.C. § 2000a(a)." *Semien v. Pizza Hut of Am., Inc.*, 204 F.3d 1115, 1115 (5th Cir. 1999). The Court looks to Title II jurisprudence to determine whether defendant's actions constituted a "discriminatory practice" under La. Rev. Stat § 51:2247.  Title II claims may be proved by direct or circumstantial evidence.  *Fahim v. Marriott Hotel Servs., Inc.*, 551 F.3d 344, 349 (5th Cir. 2008).  Direct evidence is "evidence that, if believed, proves the fact of discriminatory animus without inference or presumption." *Rodriguez v. Eli Lilly & Co.*, 820 F.3d 759, 765 (5th Cir. 2016) (quoting *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897 (5th Cir. 2002)).  Evidence is circumstantial if an inference is required for the evidence to be probative as to defendant's discriminatory animus.  *Sandstad*, 309 F.3d at 897–98. UHLA argues that plaintiffs have submitted no evidence of <u>any</u> discrimination.[47]

Plaintiffs argue that UHLA discriminated against Stanislaus because its employee identified Stanislaus as a Black man when he made the police report.[48]  Plaintiffs point to the St. John the Baptist Parish police report

---

[47]   R. Doc. 31-3 at 12–15.
[48]   R. Doc. 55 at 9.

where the reporting officer noted that a UHLA employee indicated that Stanislaus was Black.[49]   Plaintiffs also argue there was discrimination because UHLA improperly reported the van as "stolen."[50]  In support of this, plaintiffs cite the Georgia arrest report, in which the offense was classified as a "Stolen, converted, recovered and unclaimed vehicle[]," and the incident was classified as "Stolen Vehicle Recovery."[51]

Plaintiffs point to no direct evidence of race discrimination.  That the UHLA employee indicated in his statement to the police that Stanislaus was a Black man[52] is not direct evidence of discrimination, because it does not prove discriminatory animus "without inference or presumption." *Rodriguez*, 820 F.3d at 765.  Further, the UHLA employee explained in his affidavit that he was asked what Stanislaus's race was by the Sheriff's Office, and he answered accordingly.[53]

Absent direct evidence, plaintiffs must submit circumstantial evidence supporting a claim of discrimination.  The Court finds that plaintiffs failed to do so here.  Plaintiffs' argument rests on the assertion that the UHLA employee, who identified Stanislaus as a Black man to police, improperly

---

[49]   R. Doc. 31-10 at 4.
[50]   *Id.* at 10.
[51]   R. Doc. 31-10 at 5.
[52]   R. Doc. 31-10 at 4.
[53]   R. Doc. 69-1 at 2.

reported the van as "stolen" or as a "theft" to the authorities.[54]   On the contrary, the St. John the Baptist Parish police report shows that the UHLA employee reported that Stanislaus "never brought the truck in," and that the crime was for the unauthorized use of a movable.[55]  The St. John the Baptist Parish police report lists the reported offense as La. Rev. Stat. § 14:68 Unauthorized Use of a Movable, which "is the intentional taking or use of a movable which belongs to another, either without the other's consent, or by means of fraudulent conduct, practices, or representations, but without any intention to deprive the other of the movable permanently."[56]  La. Rev. Stat. § 14:68(A).  This was an accurate report at the time, given that the van had been intentionally taken for 19 days without UHLA's consent, although without an intention to deprive UHLA of the property permanently.  Further, the UHLA employee denied under oath that he told the St. John the Baptist Parish Sheriff's Office that the van was stolen.[57]  And, there is no evidence that UHLA communicated with Georgia police as to how to classify Stanislaus's offense.

---

[54]    R. Doc. 55 at 9–10.
[55]    R. Doc. 31-9 at 3–4.
[56]    R. Doc. 31-10 at 3–4.
[57]    R. Doc. 69-1 at 2.

Further, Stanislaus noted that he never felt like his race was an issue when dealing with this UHLA employee.[58]   After drawing all reasonable inferences in favor of plaintiffs, the Court finds that plaintiffs failed to raise a material issue of fact suggesting that UHLA's actions were motivated by plaintiffs' race.   Plaintiffs' assertions of racial bias are conclusory and speculative.   The Court therefore grants defendant's motion for summary judgment on the Title II and the LHRA claims.

In its complaint, plaintiffs asserted a claim under 42 U.S.C. § 1981, but plaintiffs do not oppose defendant's motion for summary judgment on this claim.   In the Fifth Circuit, a district court may not grant a "default" summary judgment on the ground that it is unopposed.   *See Morgan v. Fed. Express Corp.*, 114 F. Supp.3d 434, 437 (S.D. Tex. 2015) (collecting cases).   Even in the context of unopposed motions for summary judgment, the movant must still show that there is no genuine issue of material fact and that it is entitled to summary judgment as a matter of law.   *Hetzel v. Bethlehem Steel Corp.*, 50 F.3d 360, 363 n.3 (5th Cir. 1995) (quoting *Hibernia Nat. Bank v. Administracion Cent. Sociedad Anonima*, 776 F.2d 1277, 1279 (5th Cir. 1985)).   When a motion for summary judgment is unopposed, a court may accept the movant's evidence as undisputed.   *Morgan*, 114 F. Supp.3d at 437

---

[58]    R. Doc. 55-1 at 169.

(quoting U*NUM Life Ins. Co. of Am. v. Long*, 227 F. Supp.2d 609 (N.D. Tex. 2002)).  Nevertheless, if the moving party fails to meet its burden, the Court must deny its motion for summary judgment.  *Hetzel*, 50 F.3d at 362 n.3.

> Section 1981 provides as follows:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens.

42 U.S.C. § 1981(a).  Section 1981 generally forbids racial discrimination in the making and enforcement of private contracts, regardless of the race of the aggrieved party.  *Bobo v. ITT, Continental Baking Co.*, 662 F.2d 340, 342 (5th Cir. 1981).  To establish a prima facie case under Section 1981, a plaintiff must show that the alleged "discrimination concerned one or more of the activities enumerated in the statute."  *Bellows v. Amoco Oil Co.*, 118 F.3d 268, 274 (5th Cir. 1997); *see also Arguello v. Conoco, Inc.*, 330 F.3d 355, 358 (5th Cir. 2003) ("Section 1981 does not provide a general cause of action for race discrimination.  Rather it prohibits intentional race discrimination with respect to certain enumerated activities.").  Those categories include the "making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."  42 U.S.C. § 1981(b).

Plaintiffs cited Section 1981 in their complaint,[59] but they did not allege racial discrimination in connection with one of the enumerated aspects of his contractual relationship with UHLA.  Further, plaintiffs failed to point to any evidence in support of a Section 1981 claim in response to defendant's motion for summary judgment.  Because the record does not reflect racial animus by UHLA, the Court grants defendant's summary judgment motion as to plaintiffs' Section 1981 claim.

## C. Remaining Claims

### 1. *Negligence*

Defendant moves for summary judgment for plaintiffs' negligence claim.  There are five elements of a negligence claim under Louisiana law: duty, breach, factual causation, legal causation, and damages.  *Jack v. Evonik Corp.*, 79 F.4th 547, 556 (5th Cir. 2023); La. Civ. Code Ann. art. 2315.

Plaintiffs' negligence claim fails because plaintiffs fail to submit evidence creating an issue of material fact that defendant breached a duty to the plaintiffs.  Plaintiffs alleged that UHLA "owed a duty to its clients and the public to exercise reasonable care" and that it breached this duty in reporting the vehicle as stolen and insisting that Stanislaus be arrested.[60]  Contrary to

---

[59]    R. Doc. 1-1 at 1.
[60]    R. Doc. 55 at 11.

plaintiffs' conclusory assertion, the record reflects that defendant did not report the vehicle as "stolen,"[61] defendant's report was not false when made, and there is no evidence that defendant insisted to the Georgia police that Stanislaus be arrested.  Moreover, over the almost three-week period before January 20, U-Haul repeatedly attempted to contact plaintiffs before it took any action.[62]  Absent evidence creating an issue of fact as to the breach of a duty, plaintiffs' negligence claim must fail.  The Court therefore grants defendant's motion for summary judgment as to this claim.

### 2.  *Negligent and Intentional Infliction of Emotional Distress*

Defendant moves for summary judgment on plaintiffs' negligent infliction of emotional distress ("NIED") and intentional infliction of emotional distress ("IIED") claims.[63]  Plaintiffs did not oppose defendant's motion as to these claims.

Louisiana law allows recovery for negligent infliction of emotional distress under La. Civ. Code art. 2315.  *See Pelitire v. Rinker*, 270 So.3d 817, 829 (La. App. 5 Cir. 2019).  To recover for NIED, a plaintiff must establish (1) the defendant had a duty to conform his or her conduct to a specific

---

[61]  *See supra* notes 54–55 and accompanying text.
[62]  R. Doc. 31-6 at 4–5.
[63]  R. Doc. 31-3 at 20–22.

standard of care (the duty element); (2) the defendant failed to conform his or her conduct to the appropriate standard (the breach of duty element); (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and, (5) actual damages (the damages element). *Spencer v. Valero Ref. Meraux, L.L.C.*, 356 So.3d 936, 949 (La. 2023). "A negative answer to any of those inquiries results in a determination of no liability." *Id.* For NIED claims without physical injury, a plaintiff must establish "the especial likelihood of genuine and serious mental distress, arising from the special circumstances, which serves as a guarantee that the claim is not spurious." *Id.* at 950 (quoting *Moresi v. State Through Dep't of Wildlife & Fisheries*, 567 So.2d 1081, 1096 (La. 1990)).

Defendant moves on the ground that plaintiffs failed to produce evidence that it acted negligently.[64] The record discussed at length in this opinion lacks any evidence that the defendant failed to conform its conduct to an appropriate standard of care in making the report to the St. John the

---

[64] R. Doc. 31-3 at 21.

Baptist Parish Sheriff's Office.[65]   The Court therefore grants defendant's motion for summary judgment as to plaintiffs' NIED claim.

For plaintiffs' IIED claim, they must prove "(1) that the conduct of defendant was extreme and outrageous; (2) that the emotional distress suffered by plaintiff was severe; and (3) that defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from its conduct." *Roberson v. August*, 820 So.2d 620, 629 (La. App. 4 Cir. 2002); *White v. Monsanto Co.*, 585 So.2d 1205, 1209 (La. 1991).   Conduct is considered "extreme and outrageous" when it is "so atrocious as to pass the boundaries of decency and to be utterly intolerable to civilized society." *Roberson*, 820 So.2d at 620 (citing *Johnson v. English*, 779 So.2d 876 (La. App. 2 Cir. 2000)).

Defendant moves on the ground that plaintiffs failed to submit any evidence that its actions were extreme, outrageous, or atrocious.[66]   Indeed, plaintiffs present no evidence that defendant engaged in such extreme and outrageous conduct, and plaintiffs make no explicit argument that defendant did so.   Defendant reported the incident to the police, and at the time the incident was unresolved.   Such conduct does not rise to the level of "extreme

---

[65]   *See supra* notes 39–42 and accompanying text.
[66]   *Id.*

24

and outrageous" conduct that is required for an IIED claim. Moreover, there is no evidence that defendant intended to or knew it would cause plaintiffs severe emotional distress. Accordingly, plaintiffs have failed to demonstrate a genuine issue of material fact in support of their claim for IIED. The Court grants defendant's motion as to this claim.

### 3. False Imprisonment

Defendant moves for summary judgment on plaintiffs' wrongful arrest or false imprisonment claim. Plaintiffs did not oppose defendant's motion on this claim. False imprisonment, also referred to as wrongful arrest, occurs when "one arrests and restrains another against his will and without statutory authority." *Kennedy v. Sheriff of E. Baton Rouge*, 935 So.2d 669, 690 (La. 2006). This occurs when one "takes the law in his own hands and acts without a warrant from a court," *Barfield v. Marron*, 222 La. 210, 220 (1952), or when a person is detained under a warrant null and void upon its face," *Hays v. Hansen*, 692 So.2d 3, 5 (La. App. 4 Cir. 1997). But "if a person is arrested pursuant to a valid warrant, there is no false imprisonment." *Id.* There are two essential elements of a false imprisonment claim: "(1) detention of a person; and (2) the unlawfulness of such detention." *Id.* A "detention" requires the "total and unlawful restraint of a person's freedom of locomotion." *Rawls v. Daughters of Charity of St. Vincent De Paul, Inc.*,

491 F.2d 141, 146 (5th Cir. 1974) (citing *Crossett v. Campbell*, 48 So. 141 (La. 1909).

The Court assumes—because plaintiffs failed to so state—that plaintiffs' claim rests on Stanislaus's arrest. While non-police actors may be liable for false imprisonment, there are no facts in the record to demonstrate that UHLA detained plaintiffs. The police officers in Georgia, not UHLA employees, detained Stanislaus. Reporting a suspected crime does not make UHLA liable for false imprisonment. *See Kennedy*, 935 So.2d at 687, 690 (When restaurant employees reported a suspected commission of a crime to police, the record did not support that the restaurant employees falsely imprisoned the plaintiff when the police arrested him). Additionally, there is no evidence that the Georgia arresting officer executed a warrant that was facially invalid. The St. John the Baptist Parish Sheriff's Office entered a warrant for Stanislaus's arrest,[67] and the Georgia arresting officer confirmed the warrant through police channels.[68] *See Tillman v. Holsum Bakeries, Inc.*, 244 So.2d 681, 682 (La. Ct. App. 1971) (dismissing a claim for false imprisonment against a civil defendant when there was "no evidence to suggest the arrest was made without proper legal process"); *see also Hughes*

---

[67]    R. Doc. 31-10 at 3–4.
[68]    R. Doc. 31-9 at 3–4.

*v. Gulf Int'l*, 593 So.2d 776, 780 (La. App. 4 Cir. 1992), *writ denied*, 595 So.2d 658 (La. 1992) (dismissing a false imprisonment claim against a civil defendant when plaintiff was detained by police when she was arrested, her detention was lawful, and the arresting officer made the decision to arrest her). Plaintiffs fail to submit any evidence that UHLA was liable for false imprisonment. The Court grants defendant's motion for summary judgment as to this claim.

## IV.   CONCLUSION

For the foregoing reasons, the Court GRANTS defendant's motion for summary judgment and dismisses plaintiffs' defamation, discrimination, negligence, NIED, IIED, and false imprisonment claims.


New Orleans, Louisiana, this   25th   day of March, 2025.


_Sarah Vance_
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE